Next case on today's docket is the case of I think it's Cole. It's People v. Cole. People v. Cole. Can I have your... I don't think I have my... People v. Demetrius Cole. We have Mr. O'Neill and we have I'm sorry, Mr. Whitney. Whitney. And we have Ms. Shanahan. Good afternoon, Your Honors, and may it please the Court, Counsel. In reviewing a post-conviction petition at the first stage, the role of the trial court is essentially to perform an initial screening to determine if the petition meets the very low threshold of presenting the gist of a constitutional claim that is not frivolous or patently without merit. In other words, no legal constitutional basis or it's positively rebutted by the record. If the petitioner passes this test, a pro se petitioner is then assigned counsel and the petition proceeds to the second stage. I am before you this afternoon because the court below did not correctly apply this standard of law. In dismissing the petition, it first committed a factual error ruling that, and I quote, petitioner has either already raised his claims on direct appeal or he failed to raise his claims on direct appeal and therefore they are now barred by the doctrine of res judicata or waiver, end quote. In fact, none of Mr. Cole's claims were raised on his direct appeal, nor could they have been, since every single one of them were part of a broader claim of ineffective assistance of appellate counsel. Obviously, appellate counsel on the direct appeal did not raise the issue of her own ineffectiveness in the very appeal in which she was allegedly ineffective. And even looking at the underlying claims, none of the four claims that we have raised on this appeal were raised on the direct appeal. Therefore, res judicata nor waiver could possibly apply to them. The trial court then contradicted itself by acknowledging that Mr. Cole had asserted claims of ineffective assistance of appellate counsel, but that it asserted in very sweeping terms without addressing the substance of any of the claims, and the court's order is in the appendix to the brief, that none of them satisfied the two-part test for ineffective assistance of counsel, set forth in Strickland v. Washington. Yet, that was the wrong test to apply at first-stage proceedings. As our Supreme Court made abundantly clear, if people be Hodges and people be Tate, a petition alleging ineffective assistance may not be summarily dismissed at first stage if it is arguable that counsel's prejudice. Reviewing these claims de novo, as this Court should, and performing the screening function that the trial court abjectly failed to perform, this Court should hold that Mr. Cole's petition stated the gist of a constitutional claim that is not frivolous or hateful without merit. In fact, it stated four of them, but this Court need only find that it stated one in order to remand this clause for second-stage proceedings, as what should occur in the trial court. It is at least arguable that prior appellate counsel's performance was deficient and that Mr. Cole was prejudiced by that deficiency when she failed to raise the four rather glaring issues that we raise here in the direct appeal. It should be noted that in its appellee's brief, the State in a way demonstrates that this is arguable by proceeding to argue the merits of each issue rather than trying to demonstrate that each issue is frivolous or vaguely without merit, which is the first-stage standard. By the very fact that its only response was to delve into the substantive legal argument or the merits of each of these claims, it demonstrated these claims are not frivolous or vaguely without merit. The arguments the State raised in its brief may be very appropriate for a second-stage response, but we are before this Court on a first-stage dismissal, and we are bound to follow the rules applicable to that stage. So the first of these issues that we contend arguably should have been raised by appellate counsel before is that State witness Detective Kemp was allowed to give impermissible and incriminating hearsay testimony that put Mr. Cole at the scene of the crime. This error was amplified, causing prejudice, when the prosecutor was then allowed to assert in the form of a question that this out-of-court declarant, referring to Christopher Watkins, had told Kemp that Mr. Cole was quote, involved in the crime. Now, police witnesses do have some latitude to testify about an out-of-court statement if it pertains to or helps explain the course of a police investigation. It's known as the investigative procedure exception. So, for example, if Kemp had testified that after speaking to Mr. Watkins, he then turned his attention to locating Mr. Cole, that would have been perfectly permissible. But what the law makes very clear is that under the investigative procedure exception, testimony must be limited to show how the investigation was conducted, not to place into evidence the substance of any out-of-court statement or conversations for the purpose of establishing the truth in their context. And that's what happened here. And if you look at the appendix, we have the, starting from page A2 in the appendix, we have this little change. This happened several times where he was, the, Detective Kemp was allowed to get into the substance of what Christopher Watkins told him, putting Mr. Cole at the scene of the crime, and then compounding that, the prosecutor followed up and asked in the form of a question, but unfortunately without objection, saying, so now you've found that Mr. Cole was involved in the crime. So he took the impermissible hearsay and then took it a step further and implicated Mr. Cole in the crime. What happened here was pretty serious, because basically what occurred here is that the State was allowed to have a second occurrence witness, one that was not subject to cross-examination, thereby violating the defendant's right to confront the witnesses against them by the confrontation clause above the United States and over my constitutions. Got a free ride, got a second occurrence witness, couldn't be cross-examined, Mr. Watkins was never called as a witness. The second error that we believe arguably should have been raised by appellate counsel, and arguably may have changed the result on appeal, is that witness for Tasha Turner, a McDonald's employee, was allowed to give improper opinion testimony as an expert in sociolinguistics when she provided the jury with her incriminating definition of the phrase, the slang phrase, it'll let. Basically what happened, if you may recall, Your Honors, is that she testified that Mr. Cole came into the McDonald's, flashed the money around, and she had a conversation with him, and he said that, well, he had just, it'll let. The prosecutor then asked for her opinion on the meaning of the slang phrase, it'll let. Well, this was improper in a couple of respects. Number one, she had no personal knowledge of what he meant when he used that phrase. Secondly, if it's, what's the meaning of the slang phrase, she wasn't qualified as an expert in sociolinguistics or in this field of language. That's impermissible. Now, the state argued in its appellate's brief, well, the rules have been changed, but since this McCarter decision was rendered, which we cite in our brief, but McCarter has never been held wrongly decided on the basic principle that when a witness testifies as to an out-of-court statement, he is required to recite it as accurately as possible without offering his opinion as to what that statement might mean. And as a matter of fact, even though lay witnesses are now allowed under Illinois Rule of Evidence 701 to testify about the ultimate issue of the case, they're still not allowed to give expert testimony. Again, it is arguable that this was error. It is arguable that the appellate's counsel in the last appeal should have raised this, and it is arguable that that might have changed the result of the appeal. The third issue is that the trial court abused its discretion and denied Mr. Cole his right to present a complete defense when it refused to allow the defense to introduce photographs showing the view or vantage point from where Chandra Jones was sitting when she claimed to have observed Watkins and Mr. Cole beating Randy Berard, a victim in this case, through the window of his home. Now, I think the issue here is that the record does not contain exhibits that are not admitted, so this raises a fact question based on that as external to the record, making it inappropriate for resolution at the first stage. As long as it is arguable that the court made an error in not allowing this, and the argument was that, well, they would have shown her vantage point, what she could or could not have seen when the van was parked in the victim's driveway, then, you know, that Mr. Cole should have been allowed the opportunity to develop this argument at the second stage. Thank you, Your Honor, as I'll reserve the opportunity for rebuttal. Ms. Shanahan? Good morning. May I please court? My name is Sharon Shanahan, and I represent the people of the state of Illinois. The defense in his pro se post-conviction petition raised, near as I could count, about two dozen claims on appeal. We have ten minutes here today, so we're not going to handle all of those. I'm going to focus, I think, primarily on Detective Kemp's testimony and that of Natasha Turner, and I posit that neither of these two, nor any of the remaining issues, has an arguable base in law or fact. In dealing first with Detective Kemp's testimony, I disagree with counsel for the defendant that none of these claims are based on res judicata. I direct this court to its decision on direct appeal in this case, in which the question was raised whether a limiting instruction should be given pertaining to Detective Kemp's testimony regarding his findings during the course of his investigation. That's a direct quote from this court's order. Defense counsel objected to this testimony as hearsay. Defense counsel argued that trial counsel's failure to request a limiting instruction directing the jury that it could not consider Detective Kemp's testimony as proof of his guilt. Here's what this court said. Detective Kemp's testimony concerning the course of investigation was properly admitted into evidence. The testimony here merely related the course of investigation, not the substance of Watkins' statements to Detective Kemp. This court very clearly, very specifically ruled that this was properly admitted course of investigation testimony. So it is res judicata. And certainly since appellate counsel did raise it below, it cannot be ineffective for not raising it. So you can't just take an issue and twist it around and add the phrase ineffective assistance and say no, this is a new issue. This court has the trial court properly rejected this as res judicata and this court should too. And it certainly shouldn't have been a different issue when it's exactly what was raised below. So as our Supreme Court has noted, the petitioner can't obtain relief under the Post-Conviction Hearing Act simply by rephrasing a previously addressed issue in constitutional terms in his petition. And this claim is definitely defeated by res judicata.  Here in his reply read and here in oral argument today, counsel for the defendant says that Ms. Turner was testifying as an expert. There's never been any question as to whether Ms. Turner was testifying as an expert. She was giving her opinion. Illinois law clearly says that a witness can give lay opinion about the meaning of something. It's not a fact-finding thing and it's not arguable in law. And under Rule 701 of the Rules of Evidence, testimony of a lay witness is admissible if it is rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony. So suppose a witness is asked, what color is puce? Puce is one of those odd colors, you know? Can a witness say, well, I think it's kind of a grayish pink? Is that expert testimony? No, it's not. It's opinion testimony. I think that's what it is. Did they have to say the words, I think that's what it is, beforehand, before giving their opinion? No, they can say, what color is puce? Puce is kind of a grayish pink. Likewise, when counsel or a witness is asked, what does hit-a-leg mean? That witness can say, it means this. And she testified to the meaning of the phrase that she understood. She did not testify what the defendant said it meant. And she just based it on her reasoning in everyday life. Could it have also been supported by him flashing a large amount of money? I beg your pardon? Could it have also been supported by him flashing a large amount of money? Wasn't he supposedly in the McDonald's flashing around? He had a lot of money. Yes, he did have a lot of money. At the same time? And if that's what prompted the question, or the statement, I should say, was that that's what he had with a lot of money. She noticed the money. Right, that's what I was saying. And the defendant said, he hit-a-leg. Counsel asked her, or the state asked her, what does hit-a-leg mean? She gave her opinion. I'm just merely saying that that would support her thinking that that's what it meant, if somebody that maybe ordinarily didn't have a large amount of money was flashing around a lot of bills. It could. It certainly could. Now, in his reply brief on page 6, counsel seems to sort of concede that a lay witness can provide an opinion on the ultimate issue of a case, but he claims that that has nothing to do with the issue raised by Mr. Cole. And I'm still having trouble understanding why a lay witness would be able to give an opinion about the ultimate issue in a case, but not be allowed to give an opinion about something less than the ultimate case. And also in the reply brief, counsel says that this was not a question based on the perception of the witness. It was based on the knowledge of the witness. Now, counsel is drawing some kind of distinction between perception of a witness and knowledge of a witness that I'm not quite able to follow. I checked Roger's Thesaurus, and it lists knowledge as a synonym for perception. I checked two dictionaries, and they say that perception or to perceive is to attain awareness or understand of something, and that knowledge is to understand something. So if you can testify based on the perception of the witness, that means that you can – it can be based on the witness' knowledge. The words are synonymous. There is no – and finally, there is no specialized knowledge here. She was not testifying as a witness. She was simply – again, going back to my analogy of what color is puce, you just testify to what you understand that phrase to mean, that color to be. It's a lay opinion testimony. And finally, just touching on the photographs, as we noted in our briefs,  they were taken – they were not taken at night when the lights were on like they were at the time of the murder. And finally, and I think this is the crucial thing, they moved the window. The window is not in the same place. How much of a renovation had there been? I mean, was it just the foot or five feet or dead feet? No, it's on a different wall. It's on a different wall. I wish – there's a lot of great big gigantic blowups in the record of this case, and you would think that would be very clear, and it's not. But I think the record does make it clear that it is not even on the same wall. You don't even enter the house in the same place. They moved the entrance to the door. And also, again, as I stated in the brief, defense counsel wanted to show how – he wanted to say she couldn't see from where she was sitting in that car into that house. He wanted to – he specifically said he wanted to show the distance. And another picture was admitted, and the witness did testify, yes, that's about the distance I was from the house. So it absolutely couldn't have harmed anything that this picture was admitted and this one wasn't when they both accomplished the same thing. Are there any further questions? No, I don't think so, Your Honor. Mr. Whitney. Thank you, Your Honors. First of all, with respect to the issue of Detective Kemp's testimony, it was not raised judicata. The reason it's not raised judicata is a different issue was raised on the first appeal. The issue raised in the first appeal was framed as a jury instruction issue, whether there should have been a curative instruction for Kemp's testimony. Even in the court's Rule 23 order, there was no indication that the court considered the argument that Kemp was permitted to introduce a substantive and incriminating hearsay statement by Watkins denying Mr. Cole's right to cross-examine that witness. In the Davis case, People v. Davis, our Supreme Court stated that the doctrine of raised judicata only bars from consideration issues that were raised and decided on direct appeal. If the issue wasn't raised, it wasn't decided. At best, the reference to the opposing counsel post was pure dicta. It was not dispositive of the issue that Mr. Cole tried to raise in his petition. Therefore, raised judicata does not apply. Counsel stated the lay witness can testify to the meaning of words. No, a lay witness may not testify to the meaning of words unless that person has been qualified as an expert or opinion on that. Is there a difference, though, if she's testifying not to the meaning of words but what she understands that word means? Well, she wasn't asked that. She was asked what it means. But even if she were asked what she understood it would mean, that would not be relevant because the issue is what did he mean when he said it.  And as we pointed out, Mr. Cole supported his petition with two affidavits from peers of his that the term hit a limb and also means winning a large amount of money from gambling, not necessarily from theft. There's a huge difference between the two. One's a crime. One isn't. So addressing your concern, Your Honor, flashing a large amount of money doesn't help us get anywhere because you could be flashing a large amount of money because you won it on the riverboat. And so she was asked that specific question, and she gave her opinion on what the phrase meant. And there is a difference between perception and knowledge. And the reason it's relevant is because of Illinois Rule of Evidence 701, which counsel even quoted. 701 says the opinions or inferences are limited to those which are rationally based on the perception of the witness. It doesn't say knowledge. Perception of the witness implies something I observed or something I hear, not something I know because I studied the issue or because I happen to have specialized knowledge. That's the difference. A lay witness is not permitted to testify about her expertise on the meaning of some idiomatic phrase when she hasn't been qualified as an expert in that field. And that's what happened here. And again, I must remind the Court respectfully the overarching issue here is whether it's arguable we have an issue here that a fellow counsel should have raised. Once again, opposing counsel is trying to get into and argue the merits of it. The State has not demonstrated that this is frivolous or patently without merit. There is an argument here that my client deserves an opportunity to develop at the second stage. We shouldn't be having that second stage argument here, but that seems to be where we've gone, at least on that issue. And it's similar with the issue of the photographs. Yes, the window was moved. But looking at the record, the issue that the defense was trying to raise at that time was to try to determine, well, what was the witness's, the sole eyewitness here, what was her vantage point in the driveway? She may not have been able to see the front of the house at all. We don't know that. That's what they were trying to prove. My client should be permitted to develop that argument at the second stage, and if necessary, the third stage, to present to the court, well, this is what we should have been able to establish, if those photographs had been allowed to come in. You know, I respectfully remind the Court, too, that the Court ruled that the photographs would not be admitted based solely on the prosecutor's representative, representation of what Chandra Jones was expected to say before hearing a word of her actual testimony. The defense was never even allowed to try to lay the foundation for admitting these photos. This was done in a motion in Linden, 84. So, again, there's more of an argument that's appropriate for the second or third stage. The fourth—oh, sorry. Thank you. I respectfully request rebuttal, Your Honor. Thank you. Ms. Shanahan, thank you both for your arguments and briefs.